**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-26073-ALTMAN**

**BYRON HALLESLEVENZ-FERNANDEZ**,

*Petitioner*,

*v.*

**KRISTI NOEM**, *et al.*,

*Respondents*.
_______________________________________/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Our Petitioner, Byron Halleslevenz-Fernandez, alleges that the Respondents failed to follow their own regulations when they revoked his Order of Supervision ("OSUP"). *See generally* Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1]. Specifically, Halleslevenz-Fernandez alleges that Immigration and Customs Enforcement ("ICE") revoked his OSUP even though he had "complied with every condition of the order and ICE had not secured necessary travel documents for removal." *Id.* ¶ 46. He therefore believes that the "Respondents had no legitimate, non-punitive objective in revoking [his] order of supervision" and that his "detention violates substantive due process under the Fifth Amendment[.]" *Id.* ¶ 48. After careful review, we **DENY** the Petition without prejudice, but we'll allow him to file a renewed petition addressing the evidentiary issue we identify below.

### BACKGROUND

Halleslevenz-Fernandez is a native and citizen of Nicaragua. *See* Notice to Appear ("NTA") [ECF No. 9-14] at 1. Halleslevenz-Fernandez "entered into the United States at an unknown location, on an unknown date, without being inspected by an immigration officer[.]" *Ibid.* On August 10, 2009, Halleslevenz-Fernandez was encountered by ICE at the Saint Lucie County Jail after he was "arrested for stalking[.]" Form I-213 [ECF No. 9-1] at 2. He was subsequently convicted of stalking and

sentenced to time served and ordered to pay fines and court costs. *See* Stalking Final Judgment [ECF No. 9-2] at 2. When ICE encountered him at the Saint Lucie County Jail, Halleslevenz-Fernandez "admitted to being in the country illegally[,] ma[de] no claims to U.S. Citizenship or Legal Permanent Resident Status and claim[ed] no petitions pending." Form I-213 at 2. That same day, ICE issued him an NTA, charging him as inadmissible under §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the INA. *See* NTA at 5. On September 28, 2009, an immigration judge ordered Halleslevenz-Fernandez "removed from the United States to Nicaragua on the charge(s) contained in the Notice to Appear." 2009 Removal Order [ECF No. 9-10]. On October 21, 2009, Halleslevenz-Fernandez was "removed from the US to his home country of Nicaragua." Form I-831 [ECF No. 9-4] at 2.

"Following his physical removal, [Halleslevenz-Fernandez] reentered the United States at an unknown date, time, or place." Galo Decl. [ECF No. 9-7] ¶ 15. On December 4, 2023, Halleslevenz-Fernandez "was encountered by ICE ERO at the Martin County Jail in Stuart, FL following an arrest for driving under the influence and operating a motor vehicle without a license." *Id.* ¶ 16. Halleslevenz-Fernandez "was convicted of both charges and sentenced to time-served with one-year probation[.]" *Id.* ¶ 18. On December 5, 2023, the day after ICE encountered Halleslevenz-Fernandez in Martin County Jail, ICE served him "with [a] Form I-871, Notice of Intent/Decision to Reinstate Prior Order thereby reinstating the prior removal order against [him]." *Id.* ¶ 17; *see also* Form I-871 [ECF No. 9-9] ("[Y]ou are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order[.]"); 2009 Removal Order. Halleslevenz-Fernandez "remained in ICE custody from December 14, 2023, to May 31, 2024." *Id.* ¶ 1; *see also* Detention History [ECF No. 9-6] (showing Halleslevenz-Fernandez in custody at "KRO").

On December 20, 2023, Halleslevenz-Fernandez "claimed fear of return to Nicaragua," and an "asylum officer concluded that [Halleslevenz-Fernandez] had a reasonable fear of persecution or

torture, referred his case to an immigration judge[,] and placed [Halleslevenz-Fernandez] into withholding-only proceedings." Galo Decl. ¶ 22; *see also* Immigration Judge Referral [ECF No. 9-9]. On May 31, 2024, the immigration judge granted Halleslevenz-Fernandez's "application for withholding of removal from Nicaragua" and "prohibited [his] removal to Nicaragua[.]" Galo Decl. ¶¶ 24, 25. Still, Halleslevenz-Fernandez "remained subject to a removal order from the United States[.]" *Id.* ¶ 25; *see also* NTA; 2009 Removal Order. That same day, ICE released Halleslevenz-Fernandez on an OSUP. *See* Immigration Judge Order [ECF No. 9-11]; Detention History at 1 (showing that he was "released – order of supervision – humanitarian" on "5/31/2024" (cleaned up)).

On November 16, 2025, Halleslevenz-Fernandez "reported to ERO for his scheduled OSUP appointment and was taken into custody." Galo Decl. ¶ 27. That same day, ICE served Halleslevenz-Fernandez with a Notice of Revocation of Release [ECF No. 9-13] and, according to ICE, "conducted an informal interview of [the] Petitioner pursuant to 8 CFR [§] 241.4(1)(1)." Galo Decl. ¶ 29. On December 8, 2025, ICE issued Halleslevenz-Fernandez a Notice of Removal [ECF No. 9-12], informing him that it intended to remove him to "Mexico." "On October 24, 2026, ICE ERO transferred [Halleslevenz-Fernandez] to the Port Isabel Service Processing Center in Los Fresnos, TX in preparation of his removal to Mexico." Herrero Decl. [ECF No. 31-1] ¶ 7. But when ICE "transported [Halleslevenz-Fernandez] to the Hidalgo Porty of Entry for removal," he "refused to comply with his removal by refusing to get off the transport bus and speak with the Mexican authorities." *Id.* ¶¶ 9, 10. Halleslevenz-Fernandez now seeks habeas relief.

## THE LAW

Section 2241 permits district courts to grant relief to petitioners held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to deportation proceedings are cognizable under 28 U.S.C. § 2241." *Orozco v. U.S. Immigr. & Naturalization Serv.*, 911 F.2d 539, 541 (11th Cir. 1990) (cleaned up).

## Analysis

### I. Jurisdiction

As a threshold matter, the Respondents challenge our jurisdiction over the Petition. *See* Response at 8 ("[T]his Court lacks jurisdiction to review ICE's decision to revoke Petitioner's supervised release."). We thus begin by determining whether Congress has deprived federal courts of reviewing claims like the Petitioner's. *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 424 (2026) ("Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear."). We find that it has not.

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Because "§ 1252(g) does not cover the universe of deportation claims," however, "only claims that arise from one of the covered actions are excluded . . . by this provision." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (cleaned up); *see also ibid.* ("It is not a shorthand way of referring to all claims arising from deportation proceedings." (cleaned up)). The Supreme Court has thus cautioned against construing § 1252(g) "broadly" and has made clear that the provision bars only those claims that "directly relate" to the processes of commencing proceedings, adjudicating cases, and executing removal orders. *Ibid.* So, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("We have previously rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (cleaned up)); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) ("[T]he phrase 'arising from' is not infinitely elastic" and "does not reach claims that are independent of, or

wholly collateral to, the removal process, or that bear only a remote or attenuated connection to the removal of an alien." (cleaned up)). But "that does not give us license to ignore the plain meaning of the text." *Highpoint Tower Tech. Inc. v. Comm'r of Internal Revenue*, 931 F.3d 1050, 1060 n.8 (11th Cir. 2019).

Our Petitioner isn't challenging the Respondents' decision to execute his removal. Rather, he's challenging ICE's alleged failure to adhere to its applicable regulations when it revoked his OSUP. And while Section 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu v. U.S. Att'y. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). We're thus free to hear Halleslevenz-Fernandez's claims about the extent of the Respondents' adherence to their internal regulations.[1]

**II. Merits**

Having established that we can exercise jurisdiction over the Petition, we turn to the merits of Halleslevenz-Fernandez's claims. He asserts three grounds for relief, which we'll address in turn. *First*, he argues that, "[b]ecause [the] Respondents had no legitimate, non-punitive objective in revoking [his] order of supervision, [his] detention violates substantive due process under the Fifth Amendment[.]" Petition ¶ 48. But the Respondents weren't required to show any material changes in the Petitioner's circumstances to justify his re-detention. ICE may revoke an alien's OSUP "in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have

[1] Other judges in our Circuit have likewise found that we retain jurisdiction over similar claims. *See, e.g.*, *Barrios v. Ripa*, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (Gayles, J.) ("[T]he Court does have jurisdiction to adjudicate whether Respondents complied with their own OSUP revocation procedures."); *Maryanovsky v. Ripa*, 2026 WL 496778, at *3 (M.D. Fla. Feb. 23, 2026) (Howard, J.) (same); *Banega v. Warden of Soft Side S. Facility*, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026) (Steele, J.) (same). And the Supreme Court has made clear that § 2241 "confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). When ICE revokes an OSUP, it must afford the alien "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(l)(1). ICE thus had no obligation to show that the Petitioner's circumstances had changed before it could revoke his OSUP.

*Second*, Halleslevenz-Fernandez argues that "revoking [his] order of supervision without providing notice and a meaningful opportunity to respond violated procedural due process under the Fifth Amendment[.]" Petition ¶ 54. Again, the Government need only afford the alien "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." C.F.R. § 241.4(l)(1).[2] Here, Deportation Officer Bryan A. Galo swore under penalty of perjury that, "[o]n the same date and after [the] Petitioner was served the Notice of Revocation of Release, ICE ERO conducted an informal interview of [the] Petitioner pursuant to 8 C.F.R. [§] 241.4(1)(1)." Galo Decl. ¶ 29. The Petitioner argues in Reply that "ICE failed to provide [him] with a meaningful opportunity to contest the revocation of his OSUP through an informal interview." Reply at 6. Although Halleslevenz-Fernandez admits that "[t]he Respondents included a declaration by a Deportation officer who indicated only that an informal interview was conducted[,]" he insists that this isn't good enough because "[t]here is no indication of who conducted the interview and when, or what the interview

[2] The record establishes that the Petitioner received written notice of the reasons for the revocation. ICE served Halleslevenz-Fernandez with a Notice of Revocation of Release, informing him that his OSUP was being revoked because "[i]t is appropriate to enforce your removal order, which became administratively final on 9/28/2009." Notice of Revocation of Release at 1; *see also* 8 C.F.R. § 241.4(l)(2) (providing that ICE may revoke an alien's OSUP if it determines that "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien").

consisted of." *Ibid.* But the Petitioner offers no *evidence* to rebut Galo's proffer that "ICE ERO conducted an information interview" with him. Galo Decl. ¶ 29. Had the Petitioner submitted a sworn declaration—or some other *evidence* to counter the Respondents' sworn declaration—we may well agree that he's done enough to raise a genuine dispute of material fact here. But "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue . . . to be of probative evidentiary value," where those assertions are "unsupported and unsupportable by anything else contained in the record[.]" *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *see also Lopez v. Sec'y, Dep't of Corr.*, 2010 WL 5140747, at *2 (M.D. Fla. Dec. 13, 2010) (Moody, J.) ("Absent supporting evidence in the record, a court generally cannot consider a habeas petitioner's vague and conclusory assertions."); *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."). And the Petitioner cites no authority for his view that the Respondents were required to tell us "who conducted the interview and when, or what the interview consisted of." Reply at 6.

Still, we're troubled by the Petitioner's claim that ICE failed to provide him with a meaningful opportunity to contest the revocation of his OSUP through an informal interview. *Ibid.* So, if his allegation is true, we'll allow him to submit a sworn piece of evidence attesting to this claim. But we warn the Petitioner that his evidence must be *sworn under penalty of perjury* and, if true, it must *specifically* rebut the Government's sworn declaration that, "[o]n the same date and after [the] Petitioner was served the Notice of Revocation of Release, ICE ERO conducted an informal interview of [the] Petitioner pursuant to 8 C.F.R. [§] 241.4(1)(1)." Galo Decl. ¶ 29. General or vague denials will not do.

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Petition [ECF No. 1] is **DENIED** without prejudice.

2. If, after consulting with counsel, the Petitioner truly believes he has evidence that directly rebuts ICE's claim that it provided him with an informal interview, then the Petitioner may submit a renewed petition, attaching that evidence, by **November 24, 2026**. The Petitioner's failure to submit the renewed petition with the appropriate evidence by that date will preclude any further inquiry into this matter.

3. In the meantime, the Clerk is directed to **CLOSE** this case and **DENY** all pending motions.

**DONE AND ORDERED** in the Southern District of Florida on November 17, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record